IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL 21 WELFARE FUND, *et al.*<br><br>*Plaintiffs,*<br><br>v.<br><br>ARLINE CONSTRUCTION SERVICES, LLC<br><br>*Defendant.* | CIVIL ACTION<br>NO. 21-3862 |

**PAPPERT, J.**                                                                                        November 1, 2022

**MEMORANDUM**

      International Union of Painters and Allied Trades District Council 21 Welfare Fund, Joseph Ashdale—a fiduciary of the Welfare Fund, International Painters and Allied Trades Industry Pension Fund, and Terry Nelson—a fiduciary of the Pension Fund—sued Arline Construction Services, LLC, for violating the Collective Bargaining Agreement between Arline and the Union.[1]  Specifically, Plaintiffs allege Arline has neither contributed to the Funds nor complied with requests to participate in an audit as required by the CBA.  (Compl. ¶¶ 13–16.)  Arline failed to defend the suit, and Plaintiffs move for a Default Judgment.  (ECF 5).  The Court grants the Motion in part.

I

      The Welfare and Pension Funds are trust funds established under the Labor Management Relations Act.  (Compl. ¶¶ 4, 6).  Both Funds are "multiemployer plans" under the Employee Retirement Income Security Act.  *See* 29 U.S.C. § 1002(37).  Arline

---

[1] Terry Nelson replaced Tim Maitland—the Pension Fund's fiduciary listed in the Complaint—as fiduciary effective January 1, 2022.  (Mot. J. by Default at 1, ECF 5.)

1

must make regular, timely payments to the Funds under the CBA (ECF 1-3, Ex. A) and ERISA. *See* 29 U.S.C. § 1145; (Compl. ¶¶ 16, 35). Arline must also regularly file reports regarding the employees for whom contributions are required and produce all books and records necessary for audits to ensure compliance with the CBA. (*Id.* ¶ 16.) Plaintiffs ask the Court to enforce these obligations. If found delinquent, Arline must also pay "liquidated damages, interest, audit costs, and all costs of litigation, including attorney's fees." (*Id.*)

The Funds attempted to audit Arline and sought its books and records, but Arline did not comply with Plaintiffs' request. (*Id.* ¶ 17.) On December 11, 2020, counsel for the Funds sent Arline written demands that Arline cooperate with an audit. (*Id.* ¶ 18.) Receiving no response from Arline, counsel followed up on June 23, 2021, and to date, Arline has not allowed an audit to take place. (*Id.*)

Plaintiffs believe Arline underreported the number of hours employees worked from May of 2021 to August of 2021. (*Id.* ¶ 20.) Plaintiffs filed their Complaint on August 30, 2021, and served the Defendant with the Complaint and Summons on October 15, 2021. (ECF 1 and 3).[2] Arline never answered the Complaint, and the Clerk of Court entered Plaintiffs' request for Entry of Default on November 18, 2021. (ECF 4.) Plaintiffs now move for a Default Judgment against Arline, seeking an audit from January 1, 2017 through the present to determine the amount of unpaid contributions. (Compl. ¶ 29.) Plaintiffs seek an award of the contributions owed, along with liquidated

---

[2] "While a Return of Service form 'is not conclusive on the question of service on an agent, it will stand in the absence of proof to the contrary.'" *Duc Long v. MTD Prod. Inc.*, No. 16-4272, 2016 WL 9774503, at *2 (E.D. Pa. Dec. 29, 2016) (quoting *Gottlieb v. Sandia Am. Corp.*, 452 F.2d 510, 514 n.5 (3d Cir. 1971) and collecting cases); *see also Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008) ("A return of service generally serves as prima facie evidence that service was validly performed").

damages, interest, and attorneys' fees and costs. Arline has not responded to Plaintiffs' Motion or defended this suit.

II

Before the Court can enter a default judgment, it has "an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) (citations and internal quotation marks omitted). When the Court considers personal jurisdiction in the posture of a default judgment, "the plaintiffs retain the burden of proving personal jurisdiction, [but] they can satisfy that burden with a *prima facie* showing" and "may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Id.* (quoting *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005)). A plaintiff satisfies this *prima facie* standard by presenting facts that, if true, would permit the Court to exercise personal jurisdiction over the defendant. *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 418–19 (E.D. Pa. 2005).

There are two types of personal jurisdiction: general and specific. To establish specific jurisdiction, the plaintiff must satisfy a three-prong test: the defendant must have "purposefully directed [his] activities" at the forum; the litigation must "arise out of or relate to" at least one of those activities; and exercising jurisdiction must "comport[] with 'fair play and substantial justice.'" *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citations and internal quotation marks omitted); *see also O'Connor*, 496 F.3d at 317. Furthermore, a Court with personal jurisdiction over one claim against a defendant may exercise personal jurisdiction over other claims that share a common nucleus of operative fact.

*See Vanguard Leasing, Inc. v. Fleetwood Indus.*, No. 08-01407, 2009 WL 10737271, at *5 n.4 (E.D. Pa. Feb. 26, 2009).

Plaintiffs allege Arline is located in New Jersey, but "a substantial part of the events or omissions giving rise to the claim occurred from transactions" and business done with the Welfare Fund and the Union, both of which are located in Pennsylvania. (Compl. ¶¶ 6, 12.)  The Court has personal jurisdiction over Arline because it entered into a contract with the Union—which is located in Pennsylvania—and had continuous and systematic contacts with the Fund—also located in Pennsylvania—by sending them regular payments and remittance reports. (*Id.* ¶¶ 6, 13, 16.)  This action arises out of Arline's failure to perform under that contract, making defense of this suit in Pennsylvania foreseeable.  *See N. Penn. Gas Co. v. Corning Nat. Gas Corp.*, 897 F 2d. 687, 689 (3d Cir. 1990) (finding personal jurisdiction where non-resident defendant purposefully directed its activities to the forum state by transmitting monthly payments to the plaintiffs in the forum).

### III

Following the entry of a default judgment, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citations and internal quotation marks omitted).  The Court need not, however, accept the moving party's legal conclusions or allegations regarding the amount of damages.  *Id.*; *see also DirecTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998)).  Consequently, before granting a default judgment the Court must first ascertain whether "the unchallenged facts constitute a legitimate

cause of action, since a party in default does not admit mere conclusions of law." *Asher*, 2006 WL 680533, at *1.

Plaintiffs contend Arline is obligated to make payments to the Funds, supply remittance reports to the Union, and produce books and records so audits can be conducted to ascertain the amount the Funds are owed. (Mem. Supp. Pls.' Mot. J. Default at 3, 6–8, ECF 5-1.) The facts alleged in the Complaint, taken as true, demonstrate that Arline failed to perform its obligations under the CBA, and that this harmed the Funds, so Plaintiffs have alleged a legitimate cause of action. *See Int'l Union of Operating Eng'rs of E. Pa. & Del. Benefit Pension Fund v. N. Abbonizio Contractors, Inc.*, 134 F. Supp. 3d 862, 865 (E.D. Pa. 2015) ("ERISA provides that an employer obligated to make contributions to a multiemployer plan under the terms of a [collective bargaining agreement] must make those contributions in accordance with the terms and conditions of the agreement. 29 U.S.C. § 1145. A plan fiduciary is permitted to sue an employer who fails to make such required contributions. 29 U.S.C. § 1132(a).")

## IV

"Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Because Arline has not appeared or responded to the Complaint, this analysis is straightforward. Plaintiffs will be prejudiced if the Court denies the motion because they have "no other means of vindicating [their] claim[s] against" Arline. *Asher*, 2006

WL 680533, at *2.  Further, "the court may presume that an absent defendant who has failed to answer has no meritorious defense, because [i]t is not the court's responsibility to research the law and construct the parties' arguments for them." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271–72 (E.D. Pa. 2014) (internal citations and quotation marks omitted).  Finally, Arline's failure to "engage[ ] in the litigation process" constitutes "culpable conduct with respect to the entry of a default judgment." *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009).

V

After granting the motion for default judgment, the Court must address the amount of damages to award.  *See Rios v. Marv Loves 1*, No. 13-1619, 2015 WL 5161314, at *13 (E.D. Pa. Sept. 2, 2015).  The Court may conduct a hearing to determine the appropriate relief and amount of damages owed to the plaintiff, or "may rely upon detailed affidavits submitted by the parties." *J & J Sports Prods., Inc. v. Puentenueva*, No. 14-3226, 2014 WL 7330477, at *2 n.1 (E.D. Pa. Dec. 22, 2014) (citation omitted); Fed. R. Civ. P. 55(b)(2).  The Court has discretion to determine whether "a hearing is necessary or if sufficient information is available to determine damages without one."  10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2688 (4th ed. 2022).  In this case, Plaintiffs request that the Court order Arline to comply with an audit of the records to determine the compensation owed; they also request attorneys' fees.

A

Plaintiffs have provided sufficient evidence to show they are entitled to access Arline's books and records to conduct an audit in order to determine the amount owed to the Funds. Plaintiffs contacted Arline multiple times attempting to conduct an audit, yet each time, Plaintiffs' attempts were frustrated. (Compl. ¶ 18.) Under the CBA:

> [T]he Funds . . . may engage a certified public accounting firm to periodically audit the books and records of any contributing EMPLOYER . . . for the purpose, of verifying contributions due and owing to the respective Fund and or/liabilities for contributions due and owing to such Fund. The EMPLOYER shall make available to any Fund auditor all books and records requested by the auditor and/or Board of Trustees, including, but not limited to; payroll, wage, general ledger, cash disbursement records, compensation insurance audits, and any other pertinent records deemed necessary for the purpose, or ascertaining and/or verifying payments and/or determine liabilities.

(Collective Bargaining Agreement, art. 13.9, Ex.1, ECF 1-3.) The Welfare Fund's "Delinquency Policy" and the Pension Fund's "Restatement and Declaration of Trust" also permit trustees of the Funds to initiate audits to ascertain the amount of delinquent contributions. (Ex. 2 ¶¶ 7–9, ECF 1-4; Ex. 5 art. 6 § 6, ECF 5-9.)

A court-ordered audit is a "permissible form of equitable relief when the trust agreements assign[] the trustees the power to demand and examine employer records, and the corresponding responsibility to preserve and maintain trust assets." *Int'l Union of Operating Eng'rs of E. Pa. & Del. Benefit Pension Fund,* 134 F. Supp. 3d at 867 (E.D. Pa. 2015) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.,* 472 U.S. 559, 571 (1985)). Arline must comply with the audit request and turn over the books and records that the auditors require to conduct an audit ranging from January 1, 2017 to the present. Upon the completion of the audit, when Plaintiffs have

7

determined the amount owed and the interest and/or liquidated damages to be awarded under the CBA, the Court will enter a judgment in the appropriate amount.

B

The Court must award attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(2)(D). The CBA also requires Arline to pay Plaintiffs' attorneys' fees incurred during efforts to collect contributions. (Collective Bargaining Agreement, Ex. 1 art. 13.2.6, ECF 1-3.)

Plaintiffs are entitled to their attorneys' fees and costs, but Exhibit 8 (ECF 5-12), providing an itemized list of legal services performed and the billed amount of those services, does not support the $11,855.62 amount requested.[3] Moreover, their proposed Order (ECF 5-2) seeks $6,553.12 in attorneys' fees and costs. (ECF 5-1 at 1). On or before November 15, 2022, Plaintiffs shall clarify and substantiate the specific amount sought.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[3] Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Judgment By Default Against Defendant states: "The Funds have incurred attorneys' fees and costs of $11,855.62 through January 31, 2022 in attempting to collect amounts owed by Defendant and enforcing the audit. Ex. 7, Marra Decl. ¶2; Ex. 8, Attorneys' Fees. This amount is split between the Funds resulting in $8,579.06 due to the Welfare Fund and $3,276.56 due to the Pension Fund."